**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERCURY INDEMNITY COMPANY OF AMERICA, *individually and as assignee of Gabrielle Gallagher, Dennis Gallagher, and Loretta Gallagher*,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>GREAT　NORTHERN　INSURANCE COMPANY *et al.*,<br><br>　　　　　　　　　Defendants. | Civil Action No. 19-14278 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

　　This matter comes before the Court upon Plaintiff Mercury Indemnity Company of America's ("Plaintiff") Appeal of the Opinion and Order of the Honorable Louis H. Goodman, United States Magistrate Judge dated March 22, 2022 (the "Opinion"). (ECF No. 68.) Defendants Richard Associates, Inc., and Great Northern Insurance Company ("Great Northern," and collectively with Richard Associates, Inc., "Defendants") opposed (ECF Nos. 73, 74), and Plaintiff replied (ECF No. 77). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court denies Plaintiff's Appeal. Plaintiff's Motion to Stay (ECF No. 70) is, accordingly, denied as moot.

## I. BACKGROUND

### A. The Underlying Suit

This matter arises out of a personal injury action Alexis Mongiello ("Mongiello") filed against Gabrielle Gallagher ("Gallagher") for injuries Mongiello sustained in an automobile accident. At the time of the accident, Plaintiff was Gallagher's primary automobile insurer. Plaintiff's insurance policy provided bodily injury coverage of up to $250,000 per person and $500,000 per accident. (Pl.'s Moving Br. 4, ECF 68-1.) While unknown to both Gallagher and Plaintiff, Gallagher had additional coverage under an umbrella policy issued by Great Northern. (*Id.*) The umbrella policy provided excess liability coverage of up to $2,000,000 for each occurrence in excess of $500,000. (*Id.*)

In November 2014, Mongiello filed the underlying personal injury suit against Gallagher (the "Mongiello Action"). (*Id.* at 5.) Gallagher tendered her defense to Plaintiff, and Plaintiff hired the Law Offices of David Harper ("Harper") as Gallagher's defense counsel. (*Id.*) After the parties were unable to settle, the case proceeded to trial where the jury returned a verdict against Gallagher for $1.8 million. (*Id.* at 6.) On August 18, 2017, the Court amended the judgment to $2,041,326.50 (the "Judgment"). (*Id.* at 6.)

After the jury rendered its verdict, Gallagher became aware of her umbrella policy and informed Plaintiff. (*Id.* at 6.) On July 11, 2017, Great Northern informed Gallagher that it would reserve its right to deny coverage based on its policy's notice provision and that it intended to hold Plaintiff responsible for the entire Judgment. (*Id.* at 7.) As a result, Plaintiff satisfied the entire amount of the Judgment on behalf of Gallagher, which exceeded the $250,000 limit of its primary policy, and obtained an assignment of all the claims that Gallagher may have against Defendants. (*Id.* at 8.)

### B.     Great Northern's Subpoena to Harper and Plaintiff's Motion to Quash

On June 26, 2019, Plaintiff filed this action against Great Northern, demanding that Great Northern satisfy its portion of the Judgment exceeding the $250,000 policy limit. (*See generally* Compl., ECF No. 1.) Great Northern answered, alleging that Plaintiff acted in bad faith when it failed to settle the Mongiello Action within the $250,000 policy limit. (Pl.'s Moving Br. 8-9.) During discovery, Great Northern subpoenaed the production of Harper's "entire file" of the Mongiello Action (the "Harper Files") from Harper, Gallagher, and Plaintiff. (*Id.* at 9.) Plaintiff subsequently moved to quash the subpoena, arguing that the Harper Files were protected by attorney-client privilege and the work product doctrine. (*Id.*) Plaintiff further argued that Great Northern lacked a common interest with Plaintiff or Gallagher and, thus, was not entitled to the privileged materials. (*Id.*) Great Northern argued that it did, in fact, have a common interest with Plaintiff and Gallagher at the time that Plaintiff was deciding whether to settle the Mongiello Action. (*Id.*)

On October 20, 2021, Judge Goodman held an oral argument on the motion to quash. (ECF No. 63.) Following the oral argument, Plaintiff and Great Northern submitted supplemental briefs. (ECF Nos. 65-66.)

### C.     Judge Goodman's Opinion and Order

On March 22, 2022, Judge Goodman issued the Opinion denying Plaintiff's motion to quash and ordered Plaintiff to produce all documents withheld on the basis of attorney-client privilege and work product privilege. (*See* Op. and Order, ECF 67.) Judge Goodman found that the common interest doctrine did apply and, thus, "the otherwise privileged documents in the Harper File may be provided to Great Northern without waiving any attorney-client privilege or work product protection." (*Id.* at 25.) The Court's finding was based upon the good faith duty that

Plaintiff, as the primary insurer, owed to Great Northern, as the excess insurer for their mutual insured, Gallagher. (*See id.*) The Court, further, found that Great Northern was not adverse to Plaintiff during the Mongiello Action, especially since Great Northern's lack of involvement in Gallagher's defense was not due to it denying coverage. (*Id.*) The Court additionally noted that "[Plaintiff] would have been able to provide the requested Harper File to Great Northern without waiving the privilege because the disclosure would have been made to a non-adverse entity to further a common interest with respect to the handling of the Mongiello Action." (*Id.*)

## II.  **LEGAL STANDARD**

A district court will only reverse a magistrate judge's decision on a non-dispositive issue if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). "This deferential standard is 'especially appropriate where the Magistrate Judge has managed [a] case from the outset and developed a thorough knowledge of the proceedings.'" *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J. 1997) (citation omitted). Furthermore, "particularly broad deference [is] given to a magistrate judge's discovery rulings." *Farmers & Merchants Nat'l Bank v. San Clemente Fin. Grp. Sec., Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997) (citation omitted).

The burden rests with the appealing party "to demonstrate that the magistrate judge's decision was clearly erroneous or contrary to law." *McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 09-571, 2013 WL 322595, at *2 (D.N.J. Jan. 22, 2013). A decision is considered contrary to the law if the magistrate judge has "misinterpreted or misapplied applicable law." *Doe v. Hartford Life Acc. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006). Findings that are appealed as contrary to law are reviewed *de novo*. *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992).

## III.   DISCUSSION

The common interest doctrine protects privileged information or work product shared with non-parties if the disclosure is made due to actual or anticipated litigation, to further a common interest, and is made in a manner sufficient to preserve the confidentiality of the documents and prevent disclosure to adverse parties. *See O'Boyle v. Borough of Longport*, 218 N.J. 168, 198–199 (2014); *Travelers Prop. Cas. Co. of Am. v. USA Container Co.*, No. 9-1612, 2012 WL 12898823, at *22 (D.N.J. Oct. 25, 2012). Plaintiff contends that Judge Goodman misapplied the common interest doctrine by evaluating the parties' relationship at the incorrect time. (Pl.'s Moving Br. 13.) Plaintiff specifically avers that Judge Goodman "erroneously considered a point in time when Great Northern did not know of the Mongiello Action, and [Plaintiff] and Gallagher did not know that Great Northern should be involved in the Mongiello [A]ction." (*Id.*) Instead, Plaintiff argues that the Opinion's "analysis should have focused on whether Great Northern had a common interest with [Plaintiff] and Gallagher as of the time of [the Mongiello Action], when the documents were demanded." (*Id.* at 14.)

The Court finds this interpretation unavailing. While Plaintiff focuses on the timing of the disclosures, Plaintiff would have indeed always had a fiduciary duty to Great Northern if Plaintiff knew about the excess coverage. *See Allied World Assur. Co. (U.S.), Inc. v. Lincoln Gen. Ins. Co.*, 280 F.R.D. 197, 202 (M.D. Pa. 2012) (the primary insurer "owed a fiduciary duty not only to . . . the insureds, but also to . . . the excess insurer"); *see also Emps. Mut. Cas. Co. v. Key Pharms., Inc.*, No. 91-1630, 1992 WL 188336, at *1 (S.D.N.Y. July 27, 1992) ("[T]he primary carrier owes the same fiduciary obligation to the excess insurer which the primary insurer owes to its insured." (internal quotation omitted)). Where an insured alleges that an insurer breached a fiduciary duty to the insured, the insurer "may not use the attorney-client or work product privilege as a shield to

5

prevent disclosure which is relevant to the insured's bad faith action." *Emps. Mut. Cas. Co.*, 1992 WL 188336, at *1. "[T]he same principle [applies] in a bad faith action between the excess insurer and the primary insurer." *Id.*

There is, furthermore, no doubt that Plaintiff and Great Northern's interests aligned in the Mongiello Action. When Plaintiff accepted the defense obligations of Gallagher, Plaintiff and Gallagher's interests aligned. *See Allied World Assur. Co.*, 280 F.R.D. at 203 ("Generally, when an insurer accepts the defense obligations of its insured, certain interests of the insured and the insurer essentially merge."). Because Plaintiff owed a fiduciary duty to Great Northern, it is likewise true that Plaintiff and Great Northern's interests merged, and it is these such common interests that bar the privileges from attaching to the communications and work product between Harper, Gallagher, Plaintiff, and Great Northern. *Id.* ("Given [the primary insurer's fiduciary duty to [the excess insurer], it is likewise true that [their] interests also essentially merged."); *see also Emps. Mut. Cas. Co.*, 1992 WL 188336, at *1.

Judge Goodman recognized this unique relationship between excess and primary insurers. (Op. and Order 23 (listing ways in which the excess insurer relies on the primary insurer).) With this in mind, Judge Goodman found that adopting Plaintiff's reasoning leads to an "illogical result." (*Id.*) Judge Goodman also found that Great Northern's lack of participation in the Mongiello Action "was not due to an adversarial relationship between those involved, but rather, was solely due to the fact that Great Northern did not receive timely notice." (*Id.* at 22.) The Court agrees.

## IV.  CONCLUSION

Plaintiff fails to meet its burden to show Judge Goodman's Opinion was clearly erroneous or contrary to law. The Court, accordingly, denies Plaintiff's Appeal. The Court will issue an Order consistent with this Memorandum Opinion.

*Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE